**SEDGWICK LLP**
Martin J. Healy
Atty. ID No. 71133
Three Gateway Center, 12th Floor
Newark, New Jersey 07102-4072
Tel:  (973) 242-0002
Fax:  (973) 242-8099

**SAUL EWING LLP**
Paul M. Hummer
Amy L. Piccola
Atty. ID Nos. 46413, 208888
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel:  (215) 972-7788
Fax:  (215) 972-1851

*Attorneys for Defendant*
*Swiss Re International SE*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAP AMERICA, INC., ET AL | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | NO. 2:12-cv-04692 |
| v. | : | |
| | : | |
| SWISS RE INTERNATIONAL SE | : | |
| (F/K/A/ SR INTERNATIONAL | : | |
| BUSINESS INSURANCE | : | |
| COMPANY LTD.), | : | |
| | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SRI'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE ACTION PENDING ARBITRATION

SWISS RE INTERNATIONAL SE ("SRI") respectfully files this Motion To Compel

Arbitration And To Dismiss The Complaint Or, In The Alternative, To Stay The Action Pending

Arbitration.

## I.    INTRODUCTION

Plaintiffs SAP AMERICA, INC. and SAP AG (collectively, "Plaintiffs") filed this action in state court in an apparent effort to circumvent an express agreement to arbitrate any disputes "arising out of" or "relating to" an insurance policy that SRI, a company based in Luxembourg, issued to SAP Aktiengesellschaft (presumably, "SAP AG"), a company based in Germany. Plaintiffs' attempt is contrary to well-established international and domestic law.  In their Complaint, Plaintiffs admit that the policy at issue requires the arbitration of disputes in London, and submit that "SAP will be submitting its breach of contract and declaratory causes of action by noticing arbitration against [SRI]."  At the same time, however, Plaintiffs contend that they are still entitled to file a separate action for a claim under 42 Pa. Con. Stat. § 8371("Section 8371") in a Pennsylvania state court.

SRI has obtained an interim order (the "Order"), a copy of which is attached hereto as Exhibit C, from the High Court of Justice, Queen's Bench Division, Commercial Court in London enforcing Plaintiffs' commitment to arbitrate by enjoining Plaintiffs from further prosecution of the instant action.  The Order contemplates a further hearing on SRI's Application for an Injunction in London on August 30, 2012 at which time Plaintiffs may put forth any arguments they have as to why the injunction should not become permanent.  Accordingly, SRI has removed this case and files this Motion to Compel Arbitration and To Dismiss in order to preserve its rights pending the outcome of the proceedings before the High Court of Justice.  SRI has, concomitantly with the filing of this Motion, advised Plaintiffs that SRI is willing to stipulate to an extension of time for Plaintiffs to respond to both the removal and this Motion until such time as it is known whether Plaintiffs will be permanently enjoined from pursuing this action.

Plaintiffs' attempt to evade their commitment to arbitrate in London contravenes the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") and the Federal Arbitration Act ("FAA"), both of which apply to the policy at issue and compel the enforcement of arbitration agreements in international commercial contracts between signatory countries.  Notably, Plaintiffs ignore the terms of the arbitration provision and instead, rely exclusively on *Nealy v. State Farm Mutual Automobile Insurance Co.*, 695 A.2d 790, 794 (Pa. Super. Ct. 1997) to support their argument.  As *Nealy*, an intermediate state court decision, directly conflicts international and domestic law, *Nealy* is preempted and Plaintiffs' attempt to circumvent the agreement between the parties to arbitrate their claim in London and forum shop cannot stand.  For the reasons set forth below, if Plaintiffs are not permanently enjoined by the High Court of Justice from further pursuing this action, this Court should grant SRI's motion to compel arbitration and to dismiss the Complaint.

## II.    FACTS

This action arises out of Plaintiffs' and SRI's rights and obligations under insurance policy no. QK0700382, issued for the policy period September 30, 2007 to September 30, 2008 ("SRI Policy").  A copy of the Complaint, excluding exhibits, is attached hereto as Exhibit A. (Complaint, Ex. A, ¶¶ 59-60).  A copy of the policy that was attached to Plaintiffs' Complaint is attached hereto as Exhibit B.

The SRI Policy was issued to "SAP AG," or "SAP Aktiengesellschaft."  (Complaint, Ex. A, ¶¶ 4 & 23; SRI Policy, Ex. B, p. 3).  Plaintiffs allege that SAP AG is a foreign corporation organized and existing under the laws of Germany with a principal place of business in Germany (Complaint, Ex. A, ¶ 4) and that SAP America, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business in Pennsylvania (Complaint, Ex. A, ¶ 3).

1408520.4 08/22/2012

The policy attached to the Complaint reflects that it was issued by SR International Business Insurance Company LTD, which currently operates as "Swiss Re International SE," a foreign corporation organized in Luxembourg with a principal place of business in Luxembourg. (Complaint, Ex. A, ¶ 5).

Plaintiffs and SRI dispute whether the SRI Policy provides coverage for a third-party action titled *Waste Management Inc. and USA Waste-Management Resources, L.L.C. v. SAP AG and SAP America, Inc.*, Case No. 2008-17510, pending in the District Court of Harris County, Texas ("Underlying Action"). (Complaint, Ex. A, ¶ 1). In this coverage action, Plaintiffs allege that SRI acted in bad faith by denying coverage for the Underlying Action. (Complaint, Ex. A, ¶ 59). Plaintiffs seek damages pursuant to Section 8371. The SRI Policy contains an arbitration clause that requires as follows: "[a]ny dispute, controversy or claim arising out of or relating to this insurance agreement or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975, and 1979." (SRI Policy, Ex. B, p. 14) (Emphasis added).

Plaintiffs admit that the SRI Policy requires the arbitration of disputes in London (Complaint, Ex. A, ¶ 26), and represent that "SAP will be submitting its breach of contract and declaratory causes of action by noticing arbitration against [SRI] in the near future in an effort to compel [SRI] to honor its insurance coverage obligations under the [SRI Policy]." (Complaint, Ex. A, ¶ 54). The SRI Policy also provides a choice of law provision for the application of Pennsylvania law. (Complaint, Ex. A, ¶ 54).

-4-

## III.    LEGAL ARGUMENT

### A.    Plaintiffs' Claim Must Be Arbitrated In London

#### 1.    The Convention and the FAA Grant the Court the Authority to Compel Arbitration

The Convention governs agreements to arbitrate international commercial disputes. 9

U.S.C. §§ 201-208.  Chapter 2 of the FAA implements the Convention (9 U.S.C. §§ 201-208),

which should not be confused with Chapter 1 of the FAA, which governs arbitration agreements

between domestic citizens (9 U.S.C. §§ 1-16).

Section 206 provides this Court with the authority to order the arbitration of matters

subject to the Convention.  Section 206 provides as follows:

> A court having jurisdiction under this chapter may direct that
> arbitration be held in accordance with the agreement at any place
> therein provided for, whether that place is within or without the
> United States.   Such court may also appoint arbitrators in
> accordance with the provisions of the agreement.

9 U.S.C. § 206.

An arbitration agreement is subject to the Convention if it arises out of a legal

relationship that is (1) commercial and (2) between parties at least one of whom is not a United

States citizen.  9 U.S.C. § 202; *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d

513, 520 n.5 (3d Cir. 2009).  The Convention applies even when only one of the parties is

domiciled or has its principal place of business outside of the United States. [1]

---

[1]  *See e.g.*, *Industrial Risk Insurers v. M.A.N. Gutehoffnungshuette GmbH*, 141 F.3d 1434, 1441
(11th Cir. 1998) (arbitration occurred in Tampa under Florida law and all parties were
American except a German corporation); *Best Concrete Mix Corp. v. Lloyd's of London
Underwriters*, 413 F. Supp. 2d 182, 185-86 (E.D.N.Y. 2006) (additional insureds, who were
not parties to policy, alleged coverage under a policy that insureds, organized under laws of
New York with their principal place in business in New York, obtained through a New
Jersey-based producing broker, who contacted a London-based placing broker, who secured
coverage from a London-based agency authorized to provide coverage on behalf of
Underwriters for an construction project in New York); *ESAB Grp., Inc. v. Zurich Ins. PLC*,
685 F.3d 376 (4th Cir. 2012) (defendant, with a principal place of business in South Carolina,

-5-

The policy attached to the Complaint reflects that it was issued by SR International Business Insurance Company LTD, which currently operates as "Swiss Re International SE," a foreign corporation organized and existing under the laws of Luxembourg with its principal place of business in Luxembourg. (SRI Policy, Ex. B, p. 20).

The SRI Policy was issued to "SAP Aktiengesellschaft," which Plaintiffs presumably refer to as "SAP AG." (Complaint, Ex. A, ¶¶ 4 & 23; Ex. A; SRI Policy, Ex. B, p. 3). In their Complaint, Plaintiffs allege that SAP AG is a foreign corporation organized and existing under the laws of Germany with a principal place of business in Germany. (Complaint, Ex. A, ¶¶ 4, 23; SRI Policy, Ex. B, 3).

The United States, Germany, and Luxembourg are signatories to the Convention. 9 U.S.C. § 201. Accordingly, the SRI Policy indisputably falls within the Convention, which grants this Court jurisdiction to compel arbitration in London.

This Court also has authority pursuant to Chapter 1 of the FAA to compel arbitration. Chapter 1 of the FAA applies to proceedings under the Convention to the extent that it does not conflict with the Convention. 9 U.S.C. § 8. Section 4 of the FAA provides, in pertinent part, that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Therefore, this Court may compel arbitration under 9 U.S.C. § 206 of the Convention or under 9 U.S.C. § 4 of the FAA in accordance with the terms of the arbitration agreement in the SRI Policy.

---

sued under global liability policies issued by a Swedish insurer to the defendant's Swedish parent company).

1408520.4 08/22/2012

2.    Plaintiffs' Claim is Expressly Subject to the Arbitration Provision

When determining whether to grant a motion to compel arbitration, a district court must evaluate whether the parties entered into a valid arbitration agreement and whether the dispute falls within the language of the arbitration agreement. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). Based on the statements made by Plaintiffs in their verified Complaint, the parties do not dispute the validity of the arbitration agreement.

Plaintiffs admit that the SRI Policy contains an arbitration clause requiring London arbitration. (Complaint, Ex. A, ¶ 26). The SRI Policy at issue contains an arbitration clause that requires that "[a]ny <u>dispute</u>, controversy or claim <u>arising out of</u> or <u>relating to</u> this insurance agreement or the breach, termination or invalidity thereof" to be "finally and fully determined in <u>London</u>, England" and conducted in accordance with the Arbitration Acts of 1950, 1975, and 1979.[2] (SRI Policy, Ex. B, p. 14) (Emphasis added).

In the Complaint, Plaintiffs admit that their breach of contract and declaratory judgment claims are subject to arbitration in London. Indeed, Plaintiffs represent that "SAP will be submitting its breach of contract and declaratory causes of action by noticing arbitration against [SRI]." (Complaint, Ex. A, ¶ 54).

---

[2]    Similar arbitration provisions providing that "any controversy, claim or dispute arising out of or relating" to an agreement have been held to be "of the broadest nature." *Halide Grp., Inc. v. Hyosung Corp.*, Civ. A. No. 10-02392, 2010 WL 4456928, at *3 (E.D. Pa. Nov. 8, 2010); *TMG Health, Inc. v. UnitedHealth Grp., Inc.*, No. 07-115, 2007 WL 1258133, at *1 (E.D. Pa. Apr. 27, 2007); *see also Medtronic AVE Inc. v. Cordis Corp.*, 367 F.3d 147, *withdrawn and republished at* 100 F. App'x 865, 868-69 (3d Cir. 2004) (finding that when an arbitration clause refers to all matters "arising from" an agreement, it "overwhelmingly suggests that a given dispute is arbitrable."); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction"). Similarly, the Supreme Court has characterized as "broad" an arbitration clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to" the parties' agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967).

-7-

Notwithstanding those claims, however, Plaintiffs filed this action alleging statutory bad faith arising out of SRI's purported wrongful denial of coverage. Plaintiffs' contention is incorrect -- their statutory bad faith claim must be arbitrated in London because it "arises out of" and relates to the insurance agreement.

As explained by the Third Circuit, a Section 8371 claim is merely an "enforcement mechanism" that still requires "a predicate contract cause of action." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997) (concluding that a Section 8371 claim must inevitably arise under an insurance policy). *Berks Mut. Leasing Corp. v. Travelers Prop. Cas.*, No. 01-cv-6784, 2002 WL 31761419, at *5 (E.D. Pa. Dec. 9, 2002) (finding that Section 8371 is "limited to causes of action arising out of the bad faith handling or payment of claims and does not apply to conduct unrelated to the denial of a claim").

Here, Plaintiffs' Complaint makes clear that its Section 8371 claim is based on SRI's denial of coverage for the Underlying Action. *See* Complaint, Ex. A, ¶ 2 ("SAP seeks damages, interest, attorney fees and costs for [SRI]'s bad faith <u>refusal to meet its coverage obligations</u> under Section 8371."); ¶ 59 ("[SRI] has acted in bad faith . . . through its reckless and/or intentional <u>refusal to cover</u> SAP for settlement of the Underlying Action"); ¶ 60 (SRI committed bad faith by (a) " <u>denying its obligation to SAP with coverage</u>"; (b) "asserting positions that it . . . should have known were <u>unreasonable</u>"; (c) "failing to consider the legal or factual support for SAP's position"; (d) "delaying its review and investigation of the claim"; and (e) "otherwise acting intentionally, maliciously, unreasonably, or recklessly in <u>denying SAP the benefits of the insurance</u> it purchased.") (Emphasis added). (*See also* Complaint, Ex. A, ¶ 40 (alleging that SRI "failed to honor its insurance coverage obligations to SAP") and ¶ 52 (alleging that SRI "has failed and refused . . . to pay any amount under the [SRI] Policy for the Underlying Action.")).

-8-

Pursuant to the express terms of the arbitration provision in the SRI Policy, Plaintiffs

unambiguously and clearly agreed to adjudicate any dispute that could "arise out of" or "relate

to" the insurance policy.  Therefore, Plaintiffs' Section 8371 claim is subject to arbitration in a

London.  Moreover, in the event there is any uncertainty about whether Plaintiffs' bad faith

claim falls within the arbitration agreement (which there should not be), the United States

Supreme Court requires that "any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 24-25 (1983).

     3.     <u>The Convention and the FAA Preempt Any State Limitations on the
Enforceability of the Arbitration Agreement</u>

The Convention governs agreements to arbitrate international commercial disputes.  9

U.S.C. §§ 201-208.  Chapter 2 of the FAA implements the Convention (9 U.S.C. §§ 201-208),

while Chapter 1 of the FAA governs arbitration agreements between domestic citizens (9 U.S.C.

§§ 1-16).  The United States Supreme Court has explained that the purpose of adopting the

Convention was to encourage the recognition and enforcement of commercial arbitration

agreements in international contracts.  *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15

(1974).  Indeed, the Third Circuit has explained that the Convention reinforces a strong federal

policy in favor of arbitration over litigation.  The Third Circuit has explained as follows:

> [The Convention] reinforces a strong federal policy in favor of
> arbitration over litigation.  This policy "applies with special force in
> the field of international commerce."  *Mitsubishi Motors Corp. v.
> Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87
> L. Ed. 2d 444 (1985) (noting strong policy favoring arbitration);
> *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, 94 S. Ct. 2449, 41 L.
> Ed. 2d 270 (1974) (noting that the goal of [the Convention] as well as
> the purpose of its implementation by Congress was "to encourage the
> recognition and enforcement of commercial arbitration agreements in
> international contracts and to unify the standards by which agreements
> to arbitrate" are enforced); *Sandvik*, 220 F.3d at 104 ("The
> presumption in favor of arbitration carries 'special force' when

international commerce is involved, because the United States is also a
signatory to [the Convention].") (quoting *Mitsubishi Motors*, 473 U.S.
at 631; 105 S. Ct. 3346)).

*Standard Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 450 (3d Cir. 2003).

Plaintiffs argue that the Court of Common Pleas provides the appropriate venue for its

bad faith claim.  In support of this argument, Plaintiffs ignore the terms of their arbitration

provision, as well as international and domestic public policy requiring the enforcement of such

provisions.  Rather, Plaintiffs rely exclusively on *Nealy*.  (Complaint, Ex. A, ¶ 58).

Several courts have found that the FAA preempts *Nealy*.  *See, e.g., Brayman Constr.*

*Corp. v. Home Ins. Co.,* 319 F.3d 622, 627 (3d Cir. 2003) ("*Nealy* directly conflicts with, and

therefore is preempted by, the FAA"); *Central Reserve Life Ins. Co. v. Marello*, Civ. A. No. 00-

3344, 2001 WL 41129, at *1 n.1 (E.D. Pa. Jan. 17, 2001) (refusing to apply *Nealy*); *BCS Ins. Co.*

*v. Independence Blue Cross*, No. 08C6342, 2009 WL 102978, at *3-4 (N.D. Ill. Jan. 15, 2009)

(applying Pennsylvania law).

Additionally, *Nealy* is preempted by the Convention.  *See Southland Corp. v. Keating,*

465 U.S. 1, 12-17 (U.S. 1984) (explaining Congress "intended to foreclose state legislative

attempts to undercut the enforceability of arbitration agreements" subject to the Convention and

accordingly, any "state legislative attempts to undercut the enforceability of arbitration

agreements are preempted.").  In fact, Congress's adoption of the Convention was specifically

aimed towards disempowering state limitations such as *Nealy*.  *See Scherk*, 417 U.S. at 520, n.15

(finding goal of Convention is "to unify the standards by which agreements to arbitrate are

observed and arbitral awards are enforced."); *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth*, 473 U.S. 614, 625 (U.S. 1985) ("we find no warrant in the [Convention] for implying

in every contract within its ken a presumption against arbitration of statutory claims").[3] *See also McCreary Tire & Rubber Co. v. CEAT S.P.A.*, 501 F.2d 1032, 1038 (3d Cir. 1974) (applying Pennsylvania law) ("[t]he obvious purpose of the enactment of [the Convention], permitting removal of all cases falling within the terms of the treaty, was to prevent the vagaries of state law from impeding its full implementation").

*Nealy* contravenes the Convention and FAA's general enforcement of arbitration agreements and therefore does not provide a mechanism by which Plaintiffs may evade the express terms of their contract.  In an effort to resuscitate *Nealy,* Plaintiffs further argue that the parties specifically intended to incorporate *Nealy* into the policy by its selection of Pennsylvania choice of law.  (Complaint, Ex. A, ¶ 54).  However, this argument has already been expressly rejected by the United States Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53 (1995).

On facts very similar to those at issue here, the parties in *Mastrobuono* had agreed to a general choice of New York law, and a New York statute prohibited an arbitrator from awarding punitive damages.  The United States Supreme Court found that the allocation of authority between courts and arbitrators is a procedural issue and a general choice of law provision, without specific evidence to the contrary, only adopted that state's laws on substantive issues. *Id.* at 63-64.  Therefore, the choice of law provision was not interpreted to have adopted New

---

[3]  *See also, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 712 (2d Cir. 1987) (holding that "[t]he obligations of the United States under the Convention would be undermined if they were not determined according to a uniform body of federal law."); *I.T.A.D. Assoc., Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir. 1981) (holding that Convention interpretation "must not only observe the strong policy favoring arbitration, but must also foster the adoption of standards which can be uniformly applied on an international scale."); *Beiser v. Weyler*, 284 F.3d 665, 673 (5th Cir. 2002) (holding that "[r]educing local variations in how courts interpret and enforce arbitration clauses makes it easier for businesses engaged in international transactions to use and rely on such clauses").

York's law precluding arbitrators from awarding punitive damages.  Because the FAA conflicted with New York's limitations on arbitration, the FAA preempted New York's laws limiting which matters were amenable to arbitration.  *Id.* at 58 (explaining that if parties agreed to arbitrate certain matters, "the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration").

Here, *Nealy* provides that, because Pennsylvania state courts have original jurisdiction over Section 8371 claims, such claims are not subject to arbitration.  As the issue of whether the courts or the arbitrators can resolve bad faith claims is a procedural issue, and a general choice of law provision evidences only the intent to apply that state's laws to substantive issues, the parties' general selection of Pennsylvania law here does not indicate an agreement to allow Pennsylvania law to determine whether arbitrators can adjudicate bad faith claims.  Accordingly, the FAA preempts Pennsylvania's laws limiting the matters amenable to arbitration, regardless of the general Pennsylvania choice of law provision.

As *Nealy* is preempted and cannot be saved by the choice of law provision, Plaintiffs' attempt to evade its arbitration agreement must fail.[4]  Accordingly, for the reasons outlined above, and pursuant to 9 U.S.C. § 202 [the Convention] and 9 U.S.C. § 4 [the FAA], arbitration

---

[4]   Moreover, *Nealy* appears to be an aberrant decision.  Subsequent cases have cast doubt on the continuing validity of *Nealy*.  As the *Nealy* court made clear, its holding was based on the fact that a Section 8371 bad faith claim is separate and distinct from other contractual causes of action.  *See Dodds v. Pulte Home Corp.,* 909 A.2d 348, 351 (Pa. Super. Ct. 2006); *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635, 638 (Pa. Super. Ct. 1998).  Immediately after *Nealy* was decided, however, a number of state and federal cases examined Section 8371 and clarified that, while bad faith is a separate and distinct cause of action, it still depends on the existence of a predicate breach of contract.  *See Polselli,* 126 F.3d at 529-360 *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Simon Wrecking Co. v. AIU Ins. Co.,* 350 F. Supp. 2d 624, 632 (E.D. Pa. 2004) (citing *UPMC Health Sys. v. Metropolitan Life Ins. Co.,* 391 F.3d 497, 505 (3d Cir. 2004)).  These cases raise significant questions as to whether the court's holding in *Nealy* is viable.

of Plaintiffs' bad faith claim is proper and this Court has jurisdiction to compel the arbitration of

Plaintiffs' bad faith claim in London.

**B.      Plaintiffs' Only Claim Is Subject To Arbitration And Accordingly, Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of any claim for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule

12(b)(6) is "designed to screen out cases where a complaint states a claim based upon a wrong

for which there is clearly no remedy, or a claim which the plaintiff is without right or power to

assert and for which no relief could possibly be granted." *Port Auth. of NY & NJ v. Arcadian*

*Corp.*, 189 F.3d 305, 312 (3d Cir. 1999) (internal citations omitted). Plaintiffs fail to state a

claim upon which relief can be granted. In particular, because Plaintiffs' only cause of action for

bad faith must be arbitrated in London, aside from compelling arbitration, there is nothing else

for the Court to decide.

This court may dismiss an action when all the claims brought by a plaintiff are arbitrable.

*Walker v. Morgan Stanley Smith Barney LLC*, Civ. A. No. 10-02378, 2011 WL 1603490, at *3

(E.D. Pa. Apr. 27, 2011) ("Accordingly, because all of [plaintiff]'s claims are subject to

arbitration, we will dismiss this action without prejudice."); *Halide Group*, 2010 WL 4456928, at

*3 n.4 ("The Court of Appeals has held that where all of the issues raised in a suit are subject to

binding arbitration the court may dismiss rather than stay the action.") (citing *Seus v. John*

*Nuveen Co.*, 146 F.3d 175, 179 (3rd Cir. 1998)); *Grant v. Phila. Eagles LLC*, Civ. A. No. 09-

1222, 2009 WL 1845231, at *8 (E.D. Pa. June 24, 2009) ("When all of a party's claims are

within the scope of the arbitration provision, an order of dismissal is appropriate."); *Zumpano v.*

*Omnipoint Communications, Inc.*, No. 00-595, 2001 WL 43781, at *13 (E.D. Pa. Jan. 18, 2001);

*Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991) ("Retaining jurisdiction

would serve no purpose as both claims will be determined in the arbitration.  Without a live

controversy before the court, the appropriate procedure is dismissal of the action without

prejudice.")  (Citations omitted), *aff'd*, 972 F.2d 1330 (3d Cir. 1992).[5]

Here, the Complaint alleges one cause of action.  As explained above, Plaintiffs' single

cause of action is subject to arbitration in London and the entire action is arbitrable.

Accordingly, SRI respectfully requests that this Court compel arbitration and dismiss Plaintiffs'

Complaint.

### C.    In The Alternative, This Court Should Stay The Bad Faith Action Pending Adjudication On The Underlying Breach Of Contract Action

Should this Court find that it cannot compel arbitration of Plaintiffs' Section 8371's

claim in London, and because the resolution of Plaintiffs' Section 8371 claim requires a

resolution of whether a contract has been breached, SRI respectfully requests that this Court stay

the bad faith litigation pending resolution of the coverage issues in a London arbitration.  *Landis*

*v. North Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the

---

[5]    *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 600 (3d Cir. 2002) ("district court's decision to dismiss the proceedings rather than stay the proceedings under 9 U.S.C. § 3, was appropriate for reasons of judicial efficiency when all the claims involved in an action are arbitrable."  (Internal citations omitted).  *See also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998) (remanding a case to the District Court to decide whether to dismiss or stay, depending upon whether all issues before the court are arbitrable), *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration . . . the court may not deny a stay in such a situation.  This rule, however, was not intended to limit dismissal of a case in the proper circumstances.  The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.")  (internal quotations omitted); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming district court's dismissal of action because all claims were arbitrable).

-14-

power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants."). In the exercise of its sound

discretion, a court may hold one lawsuit in abeyance to abide the outcome of another that may

substantially affect it or be dispositive of the issues. *Chartener v. Provident Mut. Life Ins. Co.*,

Civ. A. No. 02-8045, 2003 WL 22518526, at *1 (E.D. Pa. Oct. 21, 2003).

A district court may stay the adjudication of bad faith claims pending resolution of the

predicate breach of contract issues. In *In re Elcom Techs. Corp.*, No. 98-13343, 2000 WL

35462496 (Bankr. E.D. Pa. Mar. 2, 2000), plaintiffs pled a cause of action for Section 8371 bad

faith and defendants filed a motion to compel arbitration. The court stayed proceedings on the

bad faith claim pending the resolution of the underlying coverage dispute. The court explained

as follows:

> If the coverage decision is decided adversely to the [Plaintiffs], the bad
> faith claim likely becomes moot. If the [Plaintiffs] prevail, the bad
> faith issue is preserved. To deny arbitration on the basis of the
> presence of a bad faith claim alone strikes the Court as a bad precedent
> to set. It would be all too easy, in other words, to include a bad faith
> claim as a corollary to a coverage lawsuit merely to provide the means
> to circumvent an otherwise enforceable arbitration clause. While the
> Court in no way implies that this has occurred here, it nevertheless
> remains convinced that, with no other legitimate basis on which to
> deny arbitration, doing so by reason of the existence of the instant bad
> faith claim would be permitting the "tail to wag the dog". . . .

*Id.* at *17.

Here, the adjudication of coverage issues and findings of facts made by the London

arbitration panel will invariably affect the viability of Plaintiffs' bad faith claim.[6] Accordingly,

---

[6] *See also Gold v. State Farm Fire & Cas. Co.*, Civ. A. No. 11-1187, 2012 WL 3020352, at *8
(E.D. Pa. July 24, 2012) ("Resolution of a coverage claim on the merits in favor of the
insurer requires dismissal of a bad faith claim premised on the denial of coverage, because
under the circumstances the insurer necessarily has a reasonable basis for denying benefits")
(citing *Frog, Switch & Mfg. Co., v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999);
*Treadways, LLC v. Travelers Indem. Co.*, No. 11-2596, 2012 WL 764917, at *2-3 (3d Cir.

resolving the coverage issues first and postponing discovery and further litigation on the Section 8371 claim would conserve judicial resources and preserve judicial economy. Thus, should this Court refuse to compel arbitration of this action, SRI respectfully requests that this Court stay Plaintiffs' Section 8371 claim until the arbitration of the breach of contract claim.

## IV.    CONCLUSION

Plaintiffs have expressly agreed to arbitrate all disputes and matters arising out of or relating to the SRI Policy or any purported breach thereof. Despite acknowledging the validity of the arbitration agreement in its verified Complaint, Plaintiffs filed this action in an effort to forum shop. Plaintiffs' attempt to circumvent its express agreement to arbitrate directly contravenes international domestic policy and Plaintiffs' efforts should not be rewarded. For the reasons identified above, SRI respectfully requests that this Court grant SRI's Motion To Compel Arbitration And To Dismiss The Complaint Or, In The Alternative, To Stay The Action Pending Arbitration.

Respectfully Submitted,

s/ Amy L. Piccola
Paul M. Hummer
Amy L. Piccola
Attorney ID Nos. 46413, 208888
Saul Ewing LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, PA 19102
(215) 972-7777
*Attorneys for Defendant*

DATED: August 23, 2012

---

Mar. 12, 2012); *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570 n.1 (E.D. Pa. 2003), *aff'd* 107 F. App'x 266 (3d Cir. 2004)).

1408520.4 08/22/2012